IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BASSI BELLOTTI S.p.A. | : |
|  | : |
| v. | : Civil Action No. DKC 2008-1309 |
|  | : |
| TRANSCONTINENTAL GRANITE, INC., et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action is a motion for summary judgment filed by Plaintiff Bassi & Bellotti S.p.A. ("Bassi & Bellotti") on its claims against one of the defendants, Transcontinental Granite, Inc. ("Transcontinental"). (Paper 15). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion will be denied.

## I. Background

Plaintiff Bassi & Belotti is an Italian corporation registered to do business in Maryland. Defendant Transcontinental is a company organized under the laws of the Commonwealth of Virginia with its principal place of business in Virginia. Defendant Thomas Passarelli is the president and director of Transcontinental.

Transcontinental owned a chain of retail stores that sold kitchen and bathroom counter tops. Between October 11, 2006 and November 11, 2007, Plaintiff sold a quantity of granite slabs to

Transcontinental.  Plaintiff alleges that Transcontinental received the slabs but did not pay for them, and that as of November 22, 2008, Transcontinental owes Plaintiff €386,536.11.[1]  After receipt of the slabs, Passarelli allegedly sold Transcontinental to Defendant Artin Afsharjavan.  Plaintiff alleges that the sale of Transcontinental to Afsharjavan does not comply with Maryland law and is fraudulent.  According to Plaintiff, the intent of the sale was to avoid paying Plaintiff for the granite slabs.  Passarelli maintains that there was no sale or transfer of assets.

Plaintiff filed a complaint in this court on the basis of diversity jurisdiction, and subsequently filed an amended complaint on January 29, 2009, alleging claims of breach of contract, fraudulent transfer, and unjust enrichment.[2]   (Paper 30). Plaintiff filed a motion for summary judgment on November 22, 2008. (Paper 15).

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

---

[1]  As will be discussed, Plaintiff contends that all payments should have been made in euros, not dollars.  Transcontinental insists that the parties agreed that payment would be made in dollars only.

[2]   The amendments do not affect the claims against Transcontinental made in the original complaint.

317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.
2008).   In other words, if there clearly exists factual issues
"that properly can be resolved only by a finder of fact because
they may reasonably be resolved in favor of either party," summary
judgment is inappropriate.  *Anderson v. Liberty Lobby*, *Inc.*, 477
U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports
Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must
construe the facts alleged in the light most favorable to the party
opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774
(2007); *Emmett,* 532 F.3d at 297.   A party who bears the burden of
proof on a particular claim must factually support each element of
his or her claim.  *Celotex Corp.*, 477 U.S. at 323.   "[A] complete
failure of proof concerning an essential element . . . necessarily
renders all other facts immaterial."  *Id*.  Thus, on those issues on
which the nonmoving party will have the burden of proof, it is his
or her responsibility to confront the motion for summary judgment
with an affidavit or other similar evidence in order to show the
existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at
256; *Celotex Corp.*, 477 U.S. at 324.   "A mere scintilla of proof,
however, will not suffice to prevent summary judgment."  *Peters v.
Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   There must be
"sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party."  *Anderson*, 477 U.S. at 249-50.
"If the evidence is merely colorable, or is not significantly

3

probative, summary judgment may be granted." *Id*. (citations omitted).

## III.  Analysis

Plaintiff argues that it is entitled to summary judgment because there is no genuine issue of material fact that Transcontinental owes Plaintiff €386,536.11. Transcontinental counters that Plaintiff's motion for summary judgment should be denied for two reasons: (1) Plaintiff has not laid a sufficient foundation for the authenticity of the records it submitted in support of its motion; and (2) there are several genuine issues of material fact that preclude granting summary judgment to Plaintiff.

### A.  Authentication

Plaintiff has submitted an affidavit from Maurizio Bassi, the president of Bassi & Belotti, as well as several invoices detailing Transcontinental's purchases from Plaintiff between 2005 and 2007. (Paper 15, Exs. A, B1 - B22). Plaintiff asserts that the invoices are self-authenticating under Fed.R.Evid. 902(8) and 902(9).[3] These rules provide:

> (8) Acknowledged documents. Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments.

---

[3]   Transcontinental incorrectly asserts that Plaintiff has attempted to authenticate the invoices under Fed.R.Evid. 803(6), the business records exception to the hearsay rule. As explained in Plaintiff's motion, Plaintiff seeks to authenticate these documents under Fed.R.Evid. 902(8) and 902(9). (Paper 15, at 2).

(9) Commercial paper and related documents. Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

Plaintiff's records are not admissible under either rule. Invoices are not self-authenticating under Fed.R.Evid. 902(9). *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004), *cert. denied*, 543 U.S. 943 (2004).  An invoice is an "itemized list of goods or services furnished by a seller to a buyer, usu[ally] specifying the price and terms of sale."  Black's Law Dictionary 833 (7th ed. 1999).  "It is not commercial paper, nor is it a document 'relating thereto to the extent provided by general commercial law.'"  *Pang*, 362 F.3d at 1192.  Moreover, it is unlikely that the invoices are self-authenticating under Fed.R.Evid. 902(8).  Although Mr. Bassi's affidavit was signed in the presence of a notary, there is no certificate of acknowledgment accompanying the invoices.

Plaintiff's invoices are nevertheless admissible under Fed.R.Evid. 901(a).  Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(b) presents a non-exhaustive list of several illustrations of evidence sufficient to authenticate records.  The first illustration under Fed.R.Evid. 901(b)(1) is "[t]estimony of [a] witness with knowledge . . . that a matter is what it is

claimed to be." This showing is satisfied by "sufficient proof that the evidence is what it purports to be and has not been altered in any material respect," and is not intended to serve as an "iron-clad" rule. *United States v. Ricco*, 52 F.3d 58, 61-62 (4th Cir. 1995). "The burden to authenticate under Rule 901 is not high -- only a *prima facie* showing is required." *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009); *see also United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)("Once that *prima facie* showing has been made, the evidence should be admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be.").

Mr. Bassi states in his affidavit that he is the president of Bassi & Bellotti and the custodian of these records. (Paper 15, Ex. A, Bassi Aff. ¶ 2). Bassi further states that he has personal knowledge about the records, that the records were created pursuant to a course of business dealings between Plaintiff and Transcontinental for goods sold, and that he affirms under penalty of perjury that they are true and correct. (*Id*. ¶¶ 3,4). Mr. Bassi has made a *prima facie* showing that he has knowledge of the documents in question and that the documents are what Plaintiff claims, thus satisfying Fed.R.Evid. 901(a).

Transcontinental insists that Plaintiff's records should not be admissible because they do not encompass the entire time period of the parties' dealings, do not reflect credits for payments that Transcontinental made, and reflect currency conversion rates that

were not agreed upon between the parties.  Transcontinental also
argues that Rule 901 requires factual specificity about how the
electronically stored information was created, acquired, maintained
and preserved.  However, Rule 901(a) requires only a *prima facie*
showing to the court, "not a full argument on admissibility."
*Vidacak*, 553 F.3d at 349.  The district court's role is merely to
serve as a "gatekeeper" in determining whether the proponent has
offered a satisfactory foundation from which the jury could
reasonably find that the evidence is authentic.  *Id*.  As Mr. Bassi
has made a *prima facie* showing, he has laid a sufficient foundation
for these records under Fed.R.Evid. 901(a).

**B.  Genuine Issues of Material Fact in Dispute**

Transcontinental also argues that there are several issues of
material fact in dispute that preclude granting summary judgment in
favor of Plaintiff. Passarelli, the president of Transcontinental,
states in his affidavit that Transcontinental purchased granite
from Plaintiff on open account terms for approximately eight years,
for which Transcontinental paid Plaintiff approximately $8,000,000.
(Paper 17, Ex. 1, Passarelli Aff. ¶ 4).  Passarelli states that
Plaintiff's claim for €386,536.11 amounts to only five percent of
the aggregate dollar value of the transactions between the parties
over their eight year relationship.  Passarelli insists that the
disagreement among the parties over this relatively small amount
stems from: (1) a failure to credit Transcontinental's account for

payments and set-offs; (2) currency conversion differences; and (3) accounting errors.

### 1. Failure to Credit Transcontinental for Payments and Set-Offs

First, Passarelli takes issue with several of the invoices Plaintiff has attached to its motion for summary judgment. Passarelli insists that Transcontinental paid Plaintiff in full for the amounts listed on Plaintiff's Exhibits B2, B7, B21, and B22, which collectively amounts to $90,639.76, or €65,473.70.  (Paper 15, Exs. B2, B7, B21, B22).  Passarelli further states that in 2007, Plaintiff delivered a variety of granite to Transcontinental that did not conform to Transcontinental's purchase order. Specifically, Transcontinental requested a variety of granite known as Marylyn Blue, but Plaintiff delivered a variety of granite known as Amadeus, which Transcontinental timely rejected.  Passarelli points out that Plaintiff improperly billed Transcontinental $12,037.38 for the Maryln Blue granite, as seen in Plaintiff's Exhibit B11.  (Paper 15, Ex. B11).

In addition, Passarelli maintains that on five separate instances in 2007, Plaintiff shipped goods to Transcontinental by using wood packing material that failed to meet the requisite standards.  As a result of Plaintiff's actions, United States Customs refused to allow the containers of granite to enter the country and returned them to Italy.  United States Customs also detained three other containers of granite that Plaintiff had

shipped to Transcontinental.  Passarelli states that the significant delay in the delivery of these goods crippled Transcontinental's ability to fill customer orders and caused irreparable damage, including a loss of customer goodwill. Passarelli insists that Transcontinental is entitled to a setoff for Plaintiff's breach.

Passarelli also states that over the course of the parties' eight year relationship, Transcontinental informed Plaintiff about numerous discrepancies between the size of the granite slabs recorded in Plaintiff's invoices and the actual size of granite slabs that Transcontinental received, as measured upon delivery. Passarelli contends that Plaintiff has not credited Transcontinental for these size discrepancies.  In its reply, Plaintiff argues that Transcontinental has provided no documentation that it paid for the amounts listed in Exhibits B2, B7, B21, and B22 of Plaintiff's motion.  Plaintiff does not respond to Transcontinental's other arguments.

### 2.  Currency Conversion Differences

Second, Passarelli states that the amount that Transcontinental allegedly owes Plaintiff is in dispute because the parties never agreed on the currency exchange rate.  As a result, Passarelli asserts that differences arose between the parties' respective accounting due to mathematical rounding, the selection of different reference sources for the applicable exchange rates, and from applying different dates for the exchange rate.

9

Passarelli insists that these differences comprise a substantial portion of Plaintiff's present claim against Transcontinental.

Plaintiff counters that had Transcontinental made timely payments in dollars when the invoices were issued, Plaintiff would have been able to convert the payment to euros immediately and would have obtained what it should have, which is the increase in the value of the euro against the dollar in the intervening time. Plaintiff maintains that Transcontinental's insistence that there was a dispute as to whether the parties agreed to pay in euros or dollars is nothing more than a red herring designed to detract from Transcontinental's failure to pay Plaintiff for the delivered goods.

### 3. Accounting Errors

Finally, Passarelli states that Plaintiff's invoices are inaccurate and incomplete because they cover only a portion of the period of time within which the parties transacted business.   In addition, Passarelli contends that the invoices fail to take into account the payment terms between the parties and the changes in those terms over the course of their eight year business relationship.   According to Passarelli, the parties generally agreed that Transcontinental would make monthly payments to Plaintiff.   At times, the parties agreed that Transcontinental would pay Plaintiff 1/3 of all outstanding invoices each month, but at other times agreed that Transcontinental would pay 1/7 of any outstanding balance owed to Plaintiff each month.   Passarelli

states that most recently, the parties agreed to settle the remaining balance of the account with payments to Plaintiff of $5,000 a month. Passarelli maintains that the parties also agreed that Plaintiff would apply Transcontinental's payments to the most recent invoice first, thereafter paying down older invoices with the remaining credit. Passarelli insists that Plaintiff has improperly applied Transcontinental's payments to the wrong invoices.

Plaintiff counters that any discussion of an alleged settlement between the parties is inadmissible, but provides no support for its assertion. The court presumes that Plaintiff is referring to Fed.R.Evid. 408, which provides that statements made in compromise negotiations regarding a claim "are not admissible when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Plaintiff also asserts that Defendant's assertion regarding settlement fails to comply with Md. Code Ann. Com. Law § 22-201(a)(1), which provides that a contract requiring payment of $5,000 or more is not enforceable unless it is authenticated by a record.

As previously explained, summary judgment is inappropriate where there are factual issues that can be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 250. Here, there are several genuine issues of material fact that foreclose granting summary judgment to Plaintiff. Namely, there are disputes over how much money Transcontinental has already paid to Plaintiff, whether

Transcontinental was incorrectly charged for a shipment it rejected, and whether Transcontinental is entitled to a "set-off" for faulty shipments and size discrepancies in the granite slabs that Plaintiff sent to Transcontinental.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge