IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BASSI & BELLOTTI S.p.A.

      v.               :     Civil Action No. DKC 08-1309

TRANSCONTINENTAL GRANITE,
INC., et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) the motion for leave to file a second amended complaint filed by Plaintiff Bassi & Bellotti, S.p.A. (ECF No. 131), (2) the motions for summary judgment filed by Plaintiff Bassi & Bellotti (ECF No. 132) and Defendant Thomas R. Passarelli (ECF No. 137), (3) the motion for an extension of time to file a response/reply to the summary judgment motions filed by Plaintiff Bassi & Bellotti (ECF No. 139), and (4) the motion to strike Plaintiff's supplemental opposition to Defendant Passarelli's motion for summary judgment or in the alternative for leave to file a reply to the supplemental opposition filed by Defendant Passarelli (ECF No. 148). The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, Plaintiff's motion for leave to amend will be granted in part and denied in part, Plaintiff's motion for summary judgment will be denied, Defendant Thomas R. Passarelli's motion for summary judgment will be granted, and Defendant Thomas R.

Passarelli's motion to strike or in the alternative for leave to file a reply will be granted in part.

**I.    Background**

**A.    Factual Background**

Plaintiff Bassi & Bellotti, S.p.A. is an Italian corporation registered to do business in Maryland. Plaintiff is a vendor of Italian granite slabs. Defendant Thomas Passarelli is the President, Director, and sole shareholder of Defendant Transcontinental Granite Inc., ("Transcontinental") a company incorporated in Virginia and at one time in the business of selling kitchen and bathroom counter tops through retail stores in Maryland, Virginia, North Carolina, and Georgia. Defendant Transcontinental began operations in 1997, and Plaintiff had been one of its vendors since 2000 or 2001. By 2007, Transcontinental had eight showrooms in Virginia, Maryland, and North Carolina. Defendant Artin Afsharjavan is a citizen of Maryland who entered into two purchase and sale agreements with Transcontinental in early 2008. Defendant Stone Surfaces, MD, Inc. ("Stone Surfaces") is a company organized under the laws of the State of Maryland that was engaged in the retail sale and installation of granite surfaces in Maryland and Virginia. The claims against Stone Surfaces are currently administratively closed due to its bankruptcy proceedings. (ECF No. 90).

The remaining facts are disputed unless otherwise stated.

**1. The Terms of the Agreement Between Bassi & Bellotti & Transcontinental**

According to Plaintiff Bassi & Bellotti, its business relationship with Transcontinental began in 2001 when it agreed to sell and Transcontinental agreed to buy its polished granite slabs of various types and sizes manufactured in Italy. Plaintiff avers that at the beginning of their relationship the parties entered into a credit agreement whereby Bassi & Bellotti would provide Transcontinental a credit for each purchase and invoices were to be paid in one-seventh increments every thirty days so that every invoice would be paid in full within 210 days. Plaintiff states that each invoice submitted to Transcontinental identified the items purchased, the agreed upon unit price, the total price for the shipment in euros and U.S. dollars and, the conversion rate used, which was the prevailing rate in Milan, Italy, on the date of the invoice. Plaintiff contends that Transcontinental owes $484,599.41 for unpaid invoices dating back to October 11, 2006.

Defendant Transcontinental contends that the terms of the parties' agreement varied over time. Transcontinental avers that under their first agreement Plaintiff's invoices required payment in dollars in three installments commencing ninety days after the bill of lading date. The parties then modified the terms to allow Transcontinental to make payments for orders paid

in monthly installments of one seventh of the amount of the order. In 2007, Transcontinental contends two further modifications were made. The first allowed Transcontinental to make payments of $10,000.00 a week for past due amounts; the second reduced the amount to $5,000.00 a week. With respect to the conversion rate, Transcontinental insists that the parties agreed to use the conversion rate determined by the Federal Reserve Bank of New York and that the conversion was to be calculated on the payment's due date. Transcontinental also disputes the total sum due to Bassi & Bellotti and argues that $484,599.41 is inflated because it fails to credit Transcontinental for certain payments made, for Transcontinental's out of pocket costs associated with the delayed delivery of several containers of granite that were rejected by customs officials for improper packaging, and for Plaintiff's delivery of the wrong granite, Amadeus instead of Marlyn Blue, in April 2007.

### 2. Transaction Between Defendant Transcontinental and Defendant Artin Afsharjavan

In early 2008, Transcontinental decided to discontinue operations at five of its showrooms and sought a buyer for the furniture and fixtures therein. Transcontinental initially approached one of its competitors, Stone Surfaces, Inc. Stone Surfaces' president, Daryoush Afsharjavan, introduced

Transcontinental to his young entrepreneur son, Artin Afsharjavan, who was interested in purchasing the materials from Transcontinental.

Artin Afsharjavan and Transcontinental executed two purchase and sale agreements in January and March of 2008. The agreements provided that Transcontinental would sell all the furniture, fixtures, and equipment located in five of its showrooms located in Virginia and Maryland. Transcontinental also agreed to assist the younger Afsharjavan in obtaining leases for these showrooms from Transcontinental's existing landlords, and it granted Afsharjavan a license to use Transcontinental's registered trademark, The Countertop Company, at those locations. In exchange, Afsharjavan consented, in the first agreement, to pay $90,000 and, in the second, to pay four percent of sales from two of the showrooms for the subsequent thirty-six months. Afsharjavan paid approximately $37,000 as an initial payment, but never made any additional payments. Defendants maintain that no manufacturing operations took place at the showrooms referenced in the agreements and that no inventory of any kind was transferred, including granite slabs from Bassi & Bellotti.

**B. Procedural Background**

Plaintiff initially filed a complaint in this court on the basis of diversity jurisdiction on May 20, 2008, (ECF No. 1) and

subsequently filed an amended complaint on January 29, 2009, alleging claims of breach of contract, fraudulent transfer, and unjust enrichment. (ECF No. 30). Plaintiff's amended complaint alleged that Transcontinental's failure to pay for a quantity of granite slabs totaling €364,543.64 or $484,599.41 was a breach of contract. (*Id.* ¶ 17). It also alleged that after receipt of the slabs, Defendant Passarelli allegedly sold Transcontinental to Defendant Artin Afsharjavan. (*Id.* ¶ 9). Plaintiff claims that this sale was a fraudulent conveyance from Transcontinental to Defendant Afsharjavan for which Defendants Passarelli and Afsharjavan are liable (count II) and that as a result Defendants Passarelli and Afsharjavan were unjustly enriched (counts III and IV). (*Id.* ¶¶ 18-27).[1]

Earlier in the case Plaintiff filed a motion for summary judgment on its breach of contract claim against Transcontinental that was denied because of genuine factual disputes. (ECF No. 15, at 73-74). At the close of discovery Plaintiff filed a renewed motion for summary judgment on this claim (ECF No. 132) and also requested leave to file a second amended complaint. (ECF No. 131). Transcontinental opposes

---

[1] Plaintiff also asserted two counts against Defendant Stone Surfaces MD, Inc. (counts V and VI). These claims are currently subject to an automatic bankruptcy stay. (*See* ECF No. 90).

both motions and is joined in its opposition to the motion for leave to amend by Defendant Passarelli. (ECF Nos. 136 and 138). Defendant Passarelli also filed a motion for summary judgment on the claims of fraudulent conveyance and unjust enrichment. (ECF No. 137). Defendant Afsharjavan has not participated in or responded to any of these motions.

## II. Plaintiff's Motion for Leave To File a Second Amended Complaint

Plaintiff seeks leave to file a second amended complaint. (ECF No. 131). The proposed amendments add a count for breach of contract against Defendant Thomas Passarelli, additional factual allegations relating to the existing counts, and an allegation regarding the applicable law. (ECF No. 131, at 3). Plaintiff argues that its request is timely and falls well within the liberal standard outlined in Fed.R.Civ.P. 15(a). Plaintiff maintains that the proposed amendments reflect facts learned during discovery and its purpose in seeking leave is to conform the complaint to the evidence. (*Id.*) Specifically Plaintiff contends that the factual allegations prompting its request came to light primarily during the depositions of Maurizio Bassi on March 17, 2010, and Thomas Passarelli on July 15, 2010. (*Id.* at 5). Plaintiff's motion was filed on August 16, 2010.

Defendants Transcontinental and Passarelli oppose the request. They argue that the motion is untimely because pursuant to the November 28, 2008, Rule 16(b) scheduling order the deadline for amendments to the pleadings was January 8, 2009. They also argue that the amendments would be prejudicial and that Plaintiff's motion is made in bad faith. Finally, Defendants argue that granting Plaintiff's request would be futile because the proposed new claim that Mr. Passarelli breached an oral contract is barred by the statute of frauds and the remaining new allegations are simply surplus facts that do not alter the legal analysis. (ECF No. 134, at 1-4).

Plaintiff's motion for leave to amend its complaint triggers both Federal Rule of Civil Procedure 15(a), governing amendments to pleadings, and Rule 16(b). The standards for satisfying these two rules are at odds. Rule 15(a)(2) states in pertinent part that "leave shall be freely given when justice so requires," while Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." The Fourth Circuit resolved this tension in *Nourison Rug Corp. v. Parvisian*, 535 F.3d 295, 298 (4th Cir. 2008):

> Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings. This result is consistent with

rulings of other circuits. *See O'Connell v.*
*Hyatt Hotels of Puerto Rico*, 357 F.3d 152,
154-55 (1st Cir.2004); *Parker v. Columbia*
*Pictures Indus.*, 204 F.3d 326, 340
(2d Cir.2000); *S & W Enters. v. SouthTrust*
*Bank of Ala.*, 315 F.3d 533, 536
(5th Cir.2003); *Leary v. Daeschner*, 349 F.3d
888, 906 (6th Cir.2003); *In re Milk Prods.*
*Antitrust Litig.*, 195 F.3d 430, 437-38
(8th Cir.1999); *Sosa v. Airprint Sys., Inc.*,
133 F.3d 1417, 1419 (11th Cir.1998).

Fed.R.Civ.P. Rule 16(b)'s "good cause" standard focuses on the timeliness of the amendment and the reasons for its tardy submission. Because a court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) (quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985)), a movant must demonstrate that the reasons for the tardiness of its motion justify a departure from the rules set by the court in its Scheduling Order.

The primary consideration for Rule 16(b)'s "good cause" standard is the movant's diligence. Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry

should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

Plaintiff insists that it need only satisfy the Rule 15 standard, but nevertheless maintains that it was diligent in moving for leave to amend because the facts relating to its new count and the other new factual allegations only came to light towards the close of discovery and its motion was filed shortly thereafter. (ECF No. 136, at 8). Defendants dispute Plaintiff's contention that it learned of the facts recently. Defendants point out that the lynchpin of Plaintiff's new claim is that in 2007 Mr. Passarelli made an oral promise to Plaintiff's president to pay the debt of Transcontinental and that this oral promise is binding under Italian law. (ECF No. 134, at 4). Defendants further argue that if this allegation is true, Plaintiff should have been aware of the promise in 2007 when the promise allegedly was made and could not have learned of it for the first time at the deposition of Maurizio Bassi, Plaintiff's president, or from Defendants' discovery responses. (*Id.* at 8).

Given that the scheduling order's deadline for seeking leave to amend was almost a year and a half before the close of discovery, it is not unreasonable that Plaintiff may have learned of new facts that would prompt it to seek leave to amend its complaint after the deadline. What is unreasonable is

Plaintiff's attempt to argue that it learned of Mr. Passarelli's alleged personal guaranty through discovery or the implication that Plaintiff could not have added the claim for breach of this guaranty at an earlier stage of the litigation. Plaintiff's decision to add this count could, and should, have been made much earlier in the litigation. Plaintiff has not established good cause for the delay and will not be permitted to add this new count now. It is more convincing that the other new factual allegations were uncovered through discovery, after the scheduling order deadline for seeking leave to amend. Accordingly, Plaintiff could not have included them in his prior amendments and there is good cause for this portion of its present request. For these allegations, the court must consider whether the Rule 15 requirements have been met.

Under Rule 15(a) leave to amend "shall be freely given when justice so requires." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). Leave should be denied under Rule 15(a) "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

Defendants' arguments that the amendments would be prejudicial are limited to the proposed count VII claim of breach of contract against Mr. Passarelli that Plaintiff will

not be permitted to add.  Defendants do not argue that the inclusion of the additional factual allegations to support Plaintiff's other claims would prejudice them.  Defendants also do not argue that Plaintiff's request to add these additional allegations is motivated by bad faith.

Defendants do argue that the addition of the factual allegations would be futile.  Defendants contend that they are surplusage to the existing claims and in no way cure the defects in those claims which are subject to Defendant Passarelli's separate motion to dismiss.

The standard for futility is the same as a motion to dismiss under Fed. R.Civ.P. 12(b)(6).  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)(amendment is futile if the amended claim would fail to survive motion to dismiss).  "Leave to amend should be denied on the ground of futility only when the proposed amendment is clearly insufficient or frivolous on its face."  *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08CV288, 2009 WL 482474 at *4 (E.D.Va. Feb. 24, 2009)(citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1986); *Oroweat Foods Co.*, 785 F.2d at 510)).

Defendants have not satisfied this standard with respect to the new allegations in counts I, II, and IV.  These counts, or portions thereof, are not subject to Defendant's motion for summary judgment and remain at issue in the case.  Count III,

however, pertains only to Defendant Passarelli and is the subject of his pending motion for summary judgment. The merits of Plaintiff's amendments to this count will be discussed in the context of Defendant Passarelli's motion.

## III. Motions for Summary Judgment

### A. Preliminary Motion

Before addressing the merits of the parties' motions for summary judgment, there is a non-dispositive motion that must be addressed to determine the scope of materials that will be considered in evaluating the merits of the dispositive motions. On September 29, 2010, Plaintiff filed a motion to amend the May 21, 2010 order setting deadlines for the filing of its opposition and replies to the summary judgment motions. (ECF No. 139). Magistrate Judge Connelly's May 21, 2010 order set October 1, 2010, as the deadline for Plaintiff to file its Reply to Transcontinental's Opposition, October 1, 2010, as the deadline for Plaintiff to file its opposition to Defendant Passarelli's motion for summary judgment, and October 18, 2010, as the deadline for Defendant Passarelli to file his reply to Plaintiff's opposition. (ECF No. 119). Plaintiff sought to extend the deadlines to October 4, 2010, October 15, 2010, and November 2, 2010, respectively. (ECF No. 139, at 1). Defendants filed their joint opposition the following day, but the court was unable to rule on the motion before the

substantive filings were submitted by Plaintiff on its proposed later deadlines.

At this stage the court will consider Plaintiff's submissions. In the future, Plaintiff should endeavor to obtain extensions sufficiently in advance of court deadlines to permit the court time to consider the merits of its requests. But because there will be no prejudice to Defendants if the court considers Plaintiff's arguments, they will not be stricken.

**B.    Standard of Review**

Plaintiff has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. A motion for summary judgment shall be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to

the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

### C. Plaintiff's Renewed Motion for Summary Judgment Against Defendant Transcontinental

Plaintiff has filed a renewed motion for summary judgment on its breach of contract claim against Defendant

Transcontinental. (ECF No. 132).[2] Plaintiff's primary argument is that there are no genuine disputes of material facts and the record evidence demonstrates that Transcontinental owes Plaintiff $484,599.41 for unpaid invoices from 2006 and 2007. Transcontinental argues in response that there are genuine disputes of fact regarding the terms of the agreement between the parties and the amounts claimed due by Plaintiff. Transcontinental also contends that Plaintiff's primary pieces of factual support, the declaration of Mauricio Bassi and the English translation of Bassi & Bellotti's statement of account, are inadmissible. (ECF No. 138, at 1-2).

There is no dispute that Plaintiff and Defendant Transcontinental had an agreement whereby Plaintiff supplied granite to Transcontinental and Transcontinental paid Plaintiff for the granite. There is also no dispute that Transcontinental has not paid Plaintiff for a substantial quantity of granite that Plaintiff provided during 2006 and 2007. The question to

---

[2] Plaintiff's first motion for summary judgment against Defendant Transcontinental was filed on November 22, 2008. (ECF No. 15). Plaintiff's motion was denied in an order and accompanying memorandum opinion on August 11, 2009. (ECF Nos. 73 and 74). Summary judgment was denied because there were genuine disputes of material fact with respect to how much money Transcontinental had already paid to Plaintiff, whether Transcontinental was incorrectly charged for a shipment it rejected, and whether Transcontinental was entitled to a "set-off" for faulty shipments and size discrepancies in the granite slabs. (ECF No. 73, at 12).

be decided then is not whether Transcontinental is liable for a breach of the contract, but what damages Plaintiff is entitled to as a result of the breach.

In support of its position, Plaintiff relies almost exclusively on the English translation of its accounting documents and the affidavit submitted by Maurizio Bassi. Defendant Transcontinental submits a competing affidavit from Mr. Passarelli that alleges oral agreements between the parties to alter the terms of payment, debits, and credits. (ECF No. 138-1)(citing ECF No. 138-2 ¶ 6). Transcontinental argues that Plaintiff's accounting is inadmissible, fails to credit Transcontinental properly for payments it made, fails to credit Transcontinental for its out-of-pocket costs for the demurrage of several containers, and is otherwise replete with errors and inconsistent with the parties' agreement regarding billing. (ECF No. 138, at 1). Transcontinental also argues that Plaintiff's accounting is incorrect because it does not include set-offs for improperly packed goods and delivery of the wrong goods. (*Id.* at 1-2).

Not all of the factual disputes raised by Transcontinental are material; the accuracy of Plaintiff's accounting records in 2001 and 2002, for example, do not seem to have any bearing on the amount Transcontinental owes for granite received in 2006 and 2007. A number of the other disputed facts could

substantially alter the sums due, and, thus, there remain genuine disputes of material fact which preclude a finding of summary judgment in Plaintiff's favor with respect to damages.

For example, the conversation rate used and the time at which the invoices were converted from euros to dollars will affect the amount owed by Transcontinental. There is no document explicitly stating when and how the conversion rate was to be applied. Plaintiff now asserts that the parties agreed to use the exchange rate prevailing in the region of Milan, Italy, on the date of the invoice. (ECF No. 132-1 ¶ 6). But Plaintiff earlier asserted that it was entitled to €364,543.65 converted to dollars at the time of the court's judgment. (ECF No. 50 ¶ 17). Defendant contends that the conversion rate to be applied was the rate prevailing on the due date of the payment, as determined by the Federal Reserve Bank of New York. (ECF No. 138-1, at 8). On summary judgment the court cannot weigh the credibility of either side's argument but must view the evidence in the light most favorable to Defendant Transcontinental, the non-moving party. Here there is a genuine dispute, and because the conversion rate was not consistent during the relevant time period this dispute is material.

Another significant factual dispute concerns the credits Transcontinental is due from the demurrage of several containers in early 2007 when Plaintiff failed to ship the granite in

18

containers that complied with customs regulations. Plaintiff asserts that the parties agreed to settle this claim for a credit to Transcontinental in the sum of $15,687.00. (ECF No. 132-1, at 7). Transcontinental contends that no such agreement was reached and argues that it incurred costs in excess of that amount. (ECF No. 138-1, at 16). The documentary evidence submitted by the parties leaves the issue unresolved. (*See, e.g.,* ECF No. 132-5 and ECF No. 138-1, Attach. 10-26). Another material disputed fact is whether Defendant Transcontinental is due credits on its account for damaged goods that were part of invoices 2.483 and 3.016. (ECF No. 138-1, at 12-13)(citing ECF No. 138-2 ¶ 16 and Attach. 5; ECF No. 132-9). All of these disputes affect the amount owed to Plaintiff for granite shipped to Transcontinental in 2006 and 2007 and must be resolved by the fact finder.

Because of the many factual disputes, Plaintiff's motion for summary judgment will be denied.

### D. Defendant Thomas Passarelli's Motion for Summary Judgment

Defendant Thomas Passarelli's motion seeks summary judgment on counts II (fraudulent transfer) and III (unjust enrichment) of Plaintiff's complaint. (ECF No. 137). Defendant Passarelli also argues that because he is only alleged to be liable with

respect to counts II and III, he should be dismissed from the case. (ECF No. 137, at 8). Plaintiff opposes the motion.[3]

## 1. Fraudulent Transfer

Defendant Passarelli argues that summary judgment in his favor is appropriate with respect to count II because as a

---

[3] Plaintiff filed a supplemental memorandum in opposition to Defendant Passarelli's motion for summary judgment, without leave of court, on November 26, 2010. (ECF No. 147). Plaintiff maintains that the evidence was timely pursuant to Local Rule 105.2.b. because no hearing had been set and because parties are permitted to submit new evidence in opposition to motions for summary judgment pursuant to Fed.R.Civ.P. 56(e).

Plaintiff's arguments stretch the meaning of these rules too far. Prior to its recent amendment in December 2010, Fed.R.Civ.P. 56(e)(1) provided in part that "the court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits." The rule did not state that the court must permit supplementation or that it must do so in disregard of scheduling deadlines elsewhere stated in the rules or imposed by the court. *See Potter v. Shoney's, Inc.*, 108 F.Supp.2d 489, 498 (M.D.N.C. 1999)("Rule 56 clearly indicates that "[t]he court may [but does not have to] permit affidavits to be supplemented ... by ... further affidavits."). Likewise Local Rule 105.2.b does not provide widespread authorization to parties to continue to supplement their memoranda until two days before the hearing and is inapplicable where no hearing is deemed necessary. Local Rule 105.2.b. is a further limitation on the general filing deadlines stated in 105.2.a. which specifies that surreply are not permitted unless otherwise ordered by the court. Plaintiff's supplemental opposition is nothing but a surreply otherwise captioned, and Plaintiff has not properly sought leave to file a surreply as required by Local Rule 105.2.a.

Nevertheless because Defendant Passarelli has had an opportunity to consider the supplemental opposition and prepared a reply, there will be no prejudice from the court's consideration of all the submitted materials. Accordingly Defendant's motion to strike will be denied, but its motion for leave to file a reply to Plaintiff's supplemental opposition will be granted.

matter of law Plaintiff is not entitled to a personal money judgment against him and because Plaintiff has failed to produce sufficient evidence to prove the elements of the claim. (ECF No. 137, at 2). Defendant's primary argument is that under Maryland's fraudulent conveyance law, a remedy is only available against the transferee of the fraudulent conveyance, not the transferor and not a representative of the transferor. (*Id.* at 13). In response, Plaintiff shifts the focus of its claim and argues that Defendant Passarelli is liable because as Transcontinental's sole shareholder he was responsible for a series of transactions that rendered the corporation insolvent and deprived its creditor, Plaintiff, of money it was owed by the corporation. Plaintiff also contends that Defendant Passarelli engaged in self-dealing for his own benefit after Transcontinental could no longer meet its existing obligations. Implicitly admitting that these allegations do not fit within the confines of the fraudulent conveyance claim, Plaintiff urges the court to "fashion a remedy which literally sets aside the transaction and requires a restitution of any income Passarelli generated in 2008 for the benefit of the Plaintiff." (ECF No. 143-3, at 3).

The applicable law for count II, as alleged in the amended complaint, is Maryland's Uniform Fraudulent Conveyance Act, Md. Ann. Code, Com. Law § 15-201, *et seq.* ("MUFCA"). The statute

provides a remedy if a creditor demonstrates that a conveyance was made without fair consideration and either (1) was committed by a person or entity who is or will be rendered insolvent by the conveyance (§ 15-204), (2) was committed by a person or entity engaged or about to be engaged in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital (§ 15-205), or (3) was committed by a person or entity who intends to or believes that he will incur debts beyond his ability to pay when he undertakes the conveyance (§ 15-206).[4]   MUFCA also imposes

---

[4]   Sections 15-204 and 15-205 and 15-206 of the MUFCA provide:

> § 15-204 Conveyances by insolvent
>
> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.
>
> § 15-205 Conveyances by persons in business
>
> Every conveyance made without fair consideration when the person who makes it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and other persons who become creditors during the continuance of the business or transaction without regard to his actual intent.

liability for conveyances made with actual intent to hinder, delay, or defraud present or future creditors, regardless of whether there was fair consideration for the transfer in § 15-207.[5]  The only remedies available under MUFCA are that the creditor may seek to set aside the conveyance or levy or garnish the property transferred by the conveyance.  *See* § 15-209;[6] *Frain*

---

§ 15-206. Person about to incur debts.

Every conveyance made and obligation incurred without fair consideration when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

[5] Section 15-207 provides:

§ 15-207. Actual intent to defraud.

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors.

[6] Section 15-209 provides:

15-209. Creditors with matured claims

(a) If a conveyance or obligation is fraudulent as to a creditor whose claim has matured, the creditor, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title

*v. Perry*, 92 Md.App. 605, 620 n.7 ("Under Maryland law, once a conveyance is proven to be fraudulent, a creditor has the option of either having the conveyance set aside or attaching the property conveyed."), *cert. denied*, 328 Md. 237 (1992). Cases interpreting the statute have expanded the realm of available remedies to include suits for money judgments against the transferee where he or she "allows or causes the property to depreciate in value or parts with the property without sufficient consideration or puts it beyond the reach of the court." *Damazo v. Wahby*, 269 Md. 252, 257 (Md. 1973). No case has authorized a money judgment against the transferor, or an agent of the transferor, for violations of MUFCA.

Starting with these basic principles and assuming that Plaintiff could present facts to prove the elements of a fraudulent conveyance under §§ 15-204, 15-205, 15-206 or 15-207 as alleged in count II, Plaintiff would not be entitled to the relief he is seeking. Defendant Passarelli is not alleged to be

---

immediately or immediately from such a purchaser, may:

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the claim; or

(2) Levy on or garnish the property conveyed as if the conveyance were not made.

the transferee of any fraudulent conveyance nor has Plaintiff uncovered any evidence that he was the transferee throughout the course of discovery.  The only alleged fraudulent transfer was between Defendants Transcontinental and Afsharjavan.  Simply put on this claim there is no basis upon which Plaintiff could recover money from Defendant Passarelli.

Plaintiff seems to recognize the failings of its claim as pled and argues a different theory of recovery in its opposition.  Plaintiff now contends that by orchestrating the sale of Transcontinental's assets to Afsharjavan, Defendant Passarelli breached a fiduciary duty he owed to Transcontinental's creditors.  (ECF No. 143-3, at 7). Plaintiff's theory of recovery combines the principle espoused by several courts that corporate directors owe a fiduciary duty to creditors once the corporation has become insolvent or when it is in the zone of insolvency, (*id.*)(citing Lin, *Shift of Fiduciary Duty Upon Corporate Insolvency:  Proper Scope of Directors' Duty to Creditors*, 46 Vand.L.Rev. 1485, 1512 (1993); *Fed. Deposit Ins. Corp. v. Sea Pines Co.*, 692 F.2d 973, 977 (4th Cir. 1982); *Clarkson Co. v. Shaheen*, 660 F.2d 506, 512 (2d Cir. 1981)), with a Supreme Court case from 1939 finding that a series of transactions made by the sole shareholder of a Virginia corporation were fraudulent where they had the effect of depriving one of the corporation's creditors of access to the

corporation's assets to satisfy debts owed. (*Id.*)(citing *Pepper v. Litton*, 308 U.S. 295 (1939)).

Before reaching the merits of Plaintiff's new theory, there is the overarching problem that it is distinct and quite different from any of the claims made in Plaintiff's amended complaint or even the second amended complaint which Plaintiff recently sought leave to file. A party cannot raise a new claim through argument on summary judgment. *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 455 F.Supp.2d 399, 435 (D.Md. 2006). The United States Court of Appeals for the Fourth Circuit has made clear that the only way to raise new claims after discovery has begun is through amendment of the complaint. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009)(citing *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 Fed.Appx. 556, 563 (4th Cir. 2008)(unpublished)), *cert. denied*, 130 S.Ct. 1140 (2010); *see also Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).

Defendant Passarelli need not prove that he is entitled to judgment as a matter of law on a claim not part of the case in order to succeed. Because Plaintiff cannot recover against

Defendant Passarelli on the count of fraudulent conveyance that is pled, summary judgment will be awarded on this count.

### 2. Unjust Enrichment Claim

Defendant Passarelli argues that summary judgment is appropriate on count III because there are no allegations in the complaint to establish the elements of a claim of unjust enrichment against Defendant Passarelli; namely that Plaintiff conferred a benefit upon Defendant Passarelli, that Defendant Passarelli knew or appreciated any such benefit, or that he accepted or retained any such benefit under inequitable circumstances. (ECF No. 137 at 3). Plaintiff argues in response that the facts in the record show, or at least create a reasonable inference, that Defendant Passarelli received a benefit from Plaintiff by way of the granite Plaintiff provided to Transcontinental because Defendant Passarelli was the corporation's sole shareholder. Plaintiff further argues that it was unjust for Defendant Passarelli to retain this benefit without paying Plaintiff. (ECF No. 143-3, at 16-18).

In Maryland unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its

value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). "A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Id.* (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md.App. 624, 659 (2005), *cert. denied*, 391 Md. 579 (2006)).

The alleged unjust enrichment identified by Plaintiff consists of the "monies and properties [Defendant Passarelli] received in transferring the property of Transcontinental to Defendant Afsharjavan . . . the value of the goods and products he received from the Plaintiff and . . . the business opportunities Passarelli took for himself as Transcontinental became insolvent or was nearing insolvency." (ECF No. 131-2 ¶ 39).[7] In its opposition to the motion for summary judgment Plaintiff explains the contours of its claim thusly: Plaintiff conferred a benefit on Defendant Passarelli by shipping granite to Transcontinental and because Defendant Passarelli was the

---

[7] This is the claim as expressed in Plaintiff's second amended complaint. Plaintiff's first amended complaint, which governed at the time when Defendant Passarelli filed his motion for summary judgment did not include the portion of the claim dealing with business opportunities of Transcontinental. (*See* ECF No. 30 ¶ 26).

sole shareholder of Transcontinental he personally reaped the benefit of this inventory. (ECF No. 143-3, at 16). Defendant Passarelli appreciated the benefit of the granite either through its sale by Transcontinental or in its fraudulent conveyance to Defendant Afsharjavan. (*Id.*). Plaintiff contends that because there is no record for the sale of the granite it provided to Transcontinental the reasonable inference is that Defendant Passarelli either fraudulently conveyed it to Afsharjavan or he sold it through his business in North Carolina under a different trade name and kept the profits for himself. (*Id.* at 17). Plaintiff argues that it would be unjust for Defendant Passarelli to keep the benefit he received from the granite when Plaintiff received none and was unable to sell the granite to a another client that would have paid for it. (*Id.*).

Plaintiff's claim as presented does not state a claim for unjust enrichment against Defendant Passarelli. First, Plaintiff has not conferred any benefit directly on Defendant Passarelli. Second, the transaction between Transcontinental and Afsharjavan, the benefit of which Plaintiff argues flowed through to Defendant Passarelli because of his status with respect to the corporation, did not involve any granite belonging to Plaintiff. Plaintiff has repeatedly stated that all of Transcontinental or all of its assets were sold to Afsharjavan, but Plaintiff has identified no evidence to show

that the sale included any of the granite it provided to Transcontinental. Instead the record evidence, in the form of the purchase and sale agreements between the two parties, interrogatory responses from the Defendants, and the testimony of the Defendants, establishes that no granite was transferred to Afsharjavan. (ECF No. 137-1 ¶¶ 8, 10, 11, 16 and Attachs. 1 and 2; ECF No. 137-2 ¶¶ 7, 9-10, and 14). Plaintiff relies primarily on a Reuters news report from 2008 quoting Defendant Afsharjavan as saying that his company purchased Transcontinental (ECF No. 137-1, Attach. 4a), and the declaration of a former Transcontinental employee, Jeff Hedreth, that the company reported the sale of all its assets north of the North Carolina border to a person named Artin. (ECF No. 137-7). Defendant Afsharjavan has refuted the scope of the Reuters report and throughout discovery repeatedly responded that the sale was limited to the items listed in the purchase and sale agreements. (ECF No. 137). And Mr. Hedreth did not provide any information or express any knowledge regarding what assets were transferred by Transcontinental. Simply put, there is no evidence to support Plaintiff's theory.

For these reasons, summary judgment in favor of Defendant Passarelli is appropriate on count III and any amendments to this count in Plaintiff's proposed second amended complaint will not be permitted.

**IV. Conclusion**

For the reasons stated above, Plaintiff's motion for leave to amend will be granted in part and denied in part, Plaintiff's motion for summary judgment will be denied, Defendant Thomas R. Passarelli's motion for summary judgment will be granted, and Defendant Thomas R. Passarelli's motion to strike will be denied but his motion in the alternative for leave to file a reply will granted.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
